UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIC A. ENGLISH,

                          Plaintiff,

    -against-                                          6:05-CV-905
                                                                         (LEK/GJD)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

## **DECISION AND ORDER**

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Eric A. English ("Plaintiff") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on April 2, 2004. Administrative Transcript ("AT") 48-50, 207-10 (Dkt. No. 4). The applications were denied initially and a request was made for a hearing. AT 19, 27-30, 198, 201-06. A hearing was held before an Administrative Law Judge ("ALJ") on February 10, 2005. AT 225-82. In a decision dated March 4, 2005, the ALJ found that Plaintiff was not disabled. AT 8-18. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 20, 2005. AT 4-7. Plaintiff commenced this action on July 21, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Compl. (Dkt. No. 1).

    **B.    Contentions**

Plaintiff makes the following claims:

(1) The residual functional capacity ("RFC") determination is not supported by substantial evidence. Plntf's Brief (Dkt. No. 5) at 7-10.

(2) The credibility finding is not supported by substantial evidence.  Plntf's Brief  at 10-13.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Deft's Brief (Dkt. No. 6).

**C.     Facts**

**1.     Non-Medical Evidence**

Plaintiff, who was forty-seven years old at the time of the hearing, is married and has two children.  AT 231.  Plaintiff completed high school and underwent vocational training in air conditioning and refrigeration.  AT 237, 257.  Plaintiff last worked as a machine operator for a gun manufacturer.  AT 75.  He previously worked as an automobile salesman.  Id.

Plaintiff alleges that on October 24, 2003, his "back went out."  AT 231-32.  He described this condition as being unable to move his lower back and legs.  AT 241.  He stopped working, but in January of 2004, returned to his job as a machine operator for two and a half weeks, performing a "sit-down job."  AT 104, 233, 241.  However, he was unable to continue working because his back allegedly "went out again."  AT 75, 233.  He alleges disability due to a ruptured disc, nerve damage in his legs, and hypertension.  AT 91, 103.  He testified that he uses a cane.  AT 246.

**2.     Medical Evidence**

On August 7, 2000, Plaintiff began treating with Steven LaGrant, M.D., who Plaintiff identifies as a general practitioner.  AT 148, 177, 244.  Dr. LaGrant diagnosed Plaintiff as suffering from, inter alia, hypertension, right lumbar radiculopathy L5-S1, and low back disc disease.  AT 121-23, 132-48.  An x-ray of Plaintiff's lumbosacral spine taken on October 24, 2003 showed "[j]oint space narrowing with mild spur formation seen at the L5-S1 level."  AT 124.  Dr. LaGrant prescribed various medications and referred Plaintiff to physical therapy.  AT 121-23, 132-48.

On December 7, 2004, Dr. LaGrant opined in a functional assessment form that Plaintiff

could lift and carry up to ten pounds occasionally; that Plaintiff could sit, stand, or walk up to one hour for each activity in an eight-hour workday; that Plaintiff could use his feet only occasionally; that Plaintiff can never perform postural activities; that Plaintiff can reach, handle, push, and pull occasionally, and feel frequently; and that Plaintiff has several environmental restrictions. AT 178-81.

Dr. LaGrant referred Plaintiff to Michael Cho, M.D., who Plaintiff identifies as a neurosurgeon. AT 165; Dkt. No. 5 at 7. On November 10, 2003, Dr. Cho noted that an MRI showed a central L5-S1 disc herniation with a "slightly larger component to the right. There is compression of the [existing] S1 nerve root." AT 165. Dr. Cho diagnosed Plaintiff as suffering from S1 radiculopathy secondary to disc herniation and prescribed medication. AT 167.

On January 5, 2004, Dr. Cho noted that Plaintiff's leg pain "significantly improved." AT 161. Dr. Cho concluded that Plaintiff could "[r]eturn to work on a light duty basis next week." AT 162. However, on February 10, 2004, Dr. Cho noted that Plaintiff stated that upon returning to work, he redeveloped severe lower extremity pain in a radicular distribution. AT 159. Dr. Cho found that a subsequent MRI "reveals a change in the character of the patient's disc herniation. The lesion is now located on [the] right. The disc is moderate in size. On the previous MRI the disc was more paracentral." AT 158.

On February 19, 2004, Dr. Cho performed a right L5-S1 discectomy. AT 129-30. While it appears that Plaintiff's condition initially improved, AT 149, 152-53, on September 17, 2004, Dr. Cho noted that Plaintiff reported that the severe radicular pain in the right lower extremity had returned. AT 193. An MRI of the lumbar spine performed on October 6, 2004 showed no evidence of recurrent disc herniation. AT 176.

On October 12, 2004, Dr. Cho opined in a functional assessment form that Plaintiff was

unable to lift and carry up to ten pounds; Plaintiff can sit, stand or walk a total of one hour for each activity in an eight-hour workday; Plaintiff can use his right foot occasionally; Plaintiff can never perform postural activities; Plaintiff can never reach, handle, push, or pull; and Plaintiff had some environmental restrictions.  AT 189-92.

On January 12, 2005, Dr. Cho found that Plaintiff's pain improved, but he "continues to have significant residual pain."  AT 183.  Dr. Cho stated that he would try to treat Plaintiff's condition using physical therapy.  AT 184.  Dr. Cho concluded that Plaintiff's prognosis was poor.  AT 188.

In the interim, on July 22, 2004, Plaintiff underwent a neurology examination at the request of the agency by Myra Shayevitz, M.D.  AT 168-71.  Dr. Shayevitz found a "definite limitation to any prolong sitting, standing, walking or stair climbing.  He cannot lift and carry anything except the lightest object . . . .  I do agree that with the use of his cane he is safer and steadier."  AT 170.  She concluded that Plaintiff's prognosis is guarded.  Id.

## II.    DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. AT 12. At the second step, the ALJ determined that Plaintiff's lumbar disc disease with radiculopathy and obesity were severe. Id. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. AT 13. At the fourth step, the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work. AT 13-14. The ALJ then found that plaintiff was unable to perform any of his past relevant work. AT 15-16. At the fifth step, the ALJ referenced the Medical-Vocational Guidelines and the testimony of a vocational expert, and found that there was work in the national economy that Plaintiff could perform. AT 16-17. The ALJ

therefore concluded that Plaintiff was not disabled.  AT 17.

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its

interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C. RFC and Treating Physician Rule

In rendering a residual functional capacity (RFC) determination, the ALJ must consider, inter alia, objective medical facts, diagnoses and medical opinions based on such facts. 20 C.F.R. §§ 404.1545, 416.945; see Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(citation omitted). Evaluation of the medical opinion of a claimant's treating doctor is governed by the "treating physician rule." 20 C.F.R. § 404.1527(d)(2). As specified in the regulations, the opinion of the claimant's treating doctor is considered controlling as to the nature and severity of a claimant's impairment, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). A treating physician's opinion is binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence. Brown v. Apfel, 991 F. Supp. 166, 171 (W.D.N.Y. 1998) (citation omitted).

When substantial evidence in the record conflicts with a treating physician's opinion, that opinion will not be given controlling weight. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). However, under the applicable regulations, the Administration is required to explain the weight it gives to the opinions of a treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); see also S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) (requiring that an

ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the treating source's medical opinion and the reasons for that weight").  In determining the authoritative value of a non-controlling medical opinion, the ALJ must consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other relevant factors.  20 C.F.R. § 404.1527(d); see also Schaal, 134 F.3d at 503.  Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. Schaal, 134 F.3d at 505.

In this case, the ALJ found that Plaintiff retains the RFC to perform a limited range of sedentary level work.[1]  Specifically, the ALJ found that Plaintiff has the following RFC:

> [Plaintiff can] lift/carry less than 10 pounds frequently and 10 pounds occasionally; stand and/or walk for 2 hours; and sit for 6 hours with normal breaks.  The claimant requires a cane for ambulation/balance.  He is unable to use the right lower extremity for operation of foot/leg mechanical controls and should never be required to climb ropes, ladders, or scaffolding or perform kneeling, crouching/squatting, or crawling. He is able to climb stairs occasionally and perform occasional balancing, stooping and overhead reaching.  He should never be required to work around vibrating/moving parts with the right lower extremity and should never be required to work in high exposed places or around fast moving machinery on the ground.  In addition, he should not have more than occasional exposure to extreme heat or cold or concentrated exposure to water/liquids.

AT 13-14.

In making this determination, the ALJ found that the assessments made by Dr. LaGrant and

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

Dr. Cho "are inconsistent with their treatment records, which indicate the claimant was disabled from his former employment, not all work." AT 15. However, while it appears that the ALJ rejected these opinions, the ALJ failed to state what specific weight he assigned to their opinions, which was error. See 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-2p, 1996 WL 374188, at *5.

Moreover, the ALJ failed to explain clearly the reasons why he rejected the opinion of Dr. LaGrant. To the extent that the ALJ found that Dr. LaGrant's assessment was "inconsistent" with his treatment records, he fails to point clearly to specific portions of Dr. LaGrant's records which reflect inconsistency. Moreover, the ALJ failed to discuss the other relevant factors set forth in the regulations, 20 C.F.R. § 404.1527(d).

Regarding Dr. Cho, the ALJ explained that Dr. Cho "cleared the claimant to return to light duty work prior to the surgery, even with the known disc herniation . . . and merely stated on other occasions that the claimant would not be able to perform the physical demands of his job." AT 15. While Dr. Cho concluded on January 5, 2004 that Plaintiff could "[r]eturn to work on a light duty basis next week," AT 162, Dr. Cho's subsequent progress notes suggest that Plaintiff's condition worsened. For instance, on February 10, 2004, Dr. Cho noted that Plaintiff reported that upon returning to work, Plaintiff redeveloped severe right lower extremity pain in a radicular distribution and that an MRI showed "a change in the character of the patient's disc herniation. The lesion is now located on [the] right. The disc is moderate in size. On the previous MRI the disc was more paracentral." AT 158, 159 (emphasis added). Dr. Cho subsequently performed a right L5-S1 discectomy on February 19, 2004. AT 129-30. Although Dr. Cho's notes suggest that Plaintiff's condition appeared to improve following the surgery, AT 149, 152-53, Dr. Cho later found on September 17, 2004 that Plaintiff reported that he "continues to have severe radicular pain in the right lower extremity. There was only a short time following the surgery that he had some relief of

9

his symptoms." AT 193. Dr. Cho concluded that "there has been no improvement in his symptoms." Id. Moreover, on January 12, 2005, Dr. Cho found that Plaintiff "continues to have significant residual pain." AT 183.

In making the RFC determination, the ALJ also explained that during the examination by Dr. Shayevitz, Plaintiff "reported that he is able to sit for 5 hours (and 2 hours at a time), stand for 40 minutes, and walk 10-15 minutes at a time." AT 15. However, Dr. Shayevitz's report indicates that Plaintiff reported that "[h]e sits in a recliner for relief for about 5 hours a day." AT 168 (emphasis added). Moreover, it was noted that Plaintiff stated that the "pain in the back is increased by sitting 2 hours, standing 40 minutes, or walking 10 or 15 minutes." Id. (emphasis added). Accordingly, the ALJ failed to describe the full extent of Plaintiff's subjective complaints, as set forth in Dr. Shayevitz's report.

In light of the foregoing, the Court finds that the RFC determination is not supported by substantial evidence. The ALJ, inter alia, failed to explain the weight assigned to the opinions of Plaintiff's treating physicians, Dr. LaGrant and Dr. Cho; failed to reference specific records from Dr. LaGrant; failed to consider that Dr. Cho's progress notes indicate that Plaintiff's condition worsened; and failed to describe accurately Plaintiff's subjective complaints, as described in Dr. Shayevitz's report. Accordingly, the matter must be reversed and remanded for a proper evaluation of Plaintiff's RFC.

### D. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)

(quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence. Dkt. No. 5 at 10-13. In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AT 14. The ALJ, however, found that Plaintiff's impairments could not reasonably be expected to produce the

11

symptoms to the extent alleged. Id. For the following reasons, the Court finds that the credibility determination is not supported by substantial evidence.

First, the credibility determination is internally inconsistent. In determining Plaintiff's credibility, the ALJ stated that Plaintiff "is described as being in no acute distress in most examinations and there have been no significant or persistent findings." AT 15. However, the ALJ stated earlier in the decision that "treatment records document the claimant's persistent lower extremity complaints and statements that he is unable to perform the duties of his past work." AT 14-15 (emphasis added). The ALJ also stated earlier that "[p]ost-surgical treatment notes show that [Plaintiff] continues to have right lower extremity pain and numbness (attributed to mild residual epidural scar evidenced on recent MRI) to the extent he requires . . . a cane for ambulation and is unable to perform strenuous activities (Exhibits 4F, 5F, 8F, 9F)." AT 13 (emphasis added).

Second, the credibility determination contained inaccuracies. For instance, the ALJ noted that "there is no indication that [plaintiff] has been seen on an emergency basis due to severe pain." AT 15. However, the record shows that on February 22, 2002, Dr. LaGrant noted that Plaintiff "was seen in Urgent Care a few days ago with a low back strain." AT 146. Also, Dr. LaGrant's office note from October 24, 2003 reflects an "Urgent Care Visit," during which Plaintiff complained of right leg pain. AT 121. Similarly, on October 27, 2003, Dr. LaGrant noted that Plaintiff was "seen in Urgent Care last Friday with pain down his right leg, [he was] given a short of Demerol, told to take 800 mg of Ibuprofen . . . [and] was given Hydrocodone."[2] AT 141.

In addition, the ALJ found it significant that Plaintiff "has not tried any type of sedentary work." AT 14. However, there is some suggestion in the record that Plaintiff may have tried

---

[2] Demerol, a narcotic analgesic, is prescribed for the relief of moderate to severe pain. The PDR Pocket Guide to Prescription Drugs 421 (9th ed. 2008). Similarly, hydrocodone is a narcotic painkiller. Id. at 1508.

12

sedentary work. Regarding his attempt to return to work in January of 2004, Plaintiff described his position as a "sit down job[,] drilling trigger plates." AT 91, 104. Moreover, while Plaintiff later described this position as a "light duty job," AT 241, and Dr. Cho found on January 5, 2004 that Plaintiff could return to work on a "light duty basis," AT 162, there is no indication that Plaintiff and Dr. Cho were referencing the exertional level of "light work" as set forth in the regulations, 20 C.F.R. § 404.1567(b).

Third, Plaintiff's reported daily activities alone do not establish that he is able to engage in substantial gainful activity. The ALJ pointed out that Plaintiff's daily activities were not "indicative of disabling pain and functional limitations." AT 15. The ALJ noted that Plaintiff's reported daily activities included, "taking care of his personal needs, being able to do stretching exercises for one hour,[3] assembling bird cages,[4] watching television, reading, and some light cooking, cleaning, and shopping." AT 15. The Court notes that the Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in "for sustained periods comparable to those required to hold a sedentary job." Sarchese v. Barnhart, No. 01-CV-2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (other citation omitted)). The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity. Lecler v. Barnhart, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting Gold v. Sec. of Health, Ed. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)). Accordingly, the mere fact that Plaintiff is mobile and able to engage in some light tasks does not alone establish that he is able to engage in substantial gainful

---

[3] Plaintiff testified that he performs stretching exercises which are "broken down into . . . . three or four sessions a day" for a total of "maybe" one hour every day. AT 266.

[4] Plaintiff stated that he assembled bird feeders. AT 265-66.

activity.

In light of the foregoing, the Court finds that the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence.  Therefore, the matter must be remanded for a proper evaluation of Plaintiff's credibility.

### III.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

Dated:   January 24, 2008
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge